IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CHARLES SERO,

        Plaintiff,

vs.

CITY OF WATERLOO, IOWA,
STEVEN NEWELL, in his individual
and official capacities, ALBERT
BOVY, in his individual and official
capacities, MONTY FRANA, in his
individual and official capacities,
SHAWN BRAM, in his individual and
official capacities, and NICHOLAS
BERRY, in his individual and official
capacities,

        Defendants.

No. C08-2028

RULING ON MOTION FOR
SUMMARY JUDGMENT

_____

TABLE OF CONTENTS

*I.*     *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*    *PROCEDURAL HISTORY*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*III.*   *ISSUES PRESENTED*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*   *RELEVANT FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*V.*    *LEGAL STANDARD FOR SUMMARY JUDGMENT*. . . . . . . . . . . . . . . 7

*VI.*   *DISCUSSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     *A.*    *Plaintiff's 42 U.S.C. § 1983 Action*. . . . . . . . . . . . . . . . . . . . 8
     *B.*    *Qualified Immunity*. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C.    *Are Defendant Police Officers Entitled to Qualified*
*Immunity From Plaintiff's Claims Based Upon Entry*
*Into Plaintiff's House?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    1.    *Did Defendant Police Officers Have Reasonable Suspicion to*
*Conduct an Investigatory Stop of Burchard?* . . . . . . . . . . . 11
    2.    *Did Officer Newell's Entry Into Plaintiff's Residence Violate*
*His Constitutional Rights?* . . . . . . . . . . . . . . . . . . . . . . . 14
    3.    *Was the Right Clearly Established?* . . . . . . . . . . . . . . . . . 19
D.    *Are Defendant Police Officers Entitled to Qualified Immunity*
*From Plaintiff's Claims Based Upon Plaintiff's Arrest?* . . . . . . . . 22
    1.    *Did Defendant Police Officers Have "Arguable Probable*
*Cause" to Arrest Plaintiff?* . . . . . . . . . . . . . . . . . . . . . . . 22
    2.    *Was the Right Clearly Established?* . . . . . . . . . . . . . . . . . 25
E.    *Are Defendant Police Officers Entitled to Qualified Immunity*
*From Plaintiff's Claims Based Upon the Use of Excessive*
*Force During Plaintiff's Arrest?* . . . . . . . . . . . . . . . . . . . . . . . 26
    1.    *Did Defendant Police Officers Use Excessive Force When*
*Placing Plaintiff Under Arrest?* . . . . . . . . . . . . . . . . . . . . 26
    2.    *Was the Right Clearly Established?* . . . . . . . . . . . . . . . . . 29
F.    *Is There Sufficient Evidence that the City of Waterloo*
*Failed to Properly Train Its Police Officers?* . . . . . . . . . . . . . . . 30
G.    *Plaintiff's State Negligence Claim* . . . . . . . . . . . . . . . . . . . . . . 32

VII.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

VIII.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 37) filed by Defendants City of Waterloo, Iowa, Steven Newell, Albert Bovy, Monty Frana, Shawn Bram, and Nicholas Berry on June 5, 2009; the Resistance to Defendants' Motion for Summary Judgment (docket number 39) filed by Plaintiff Charles Sero on June 29, 2009; and the Reply Brief (docket number 44) filed by Defendants on July 16, 2009. Pursuant to Local Rule 7.c, this matter will be decided without oral argument.

## II. PROCEDURAL HISTORY

On April 25, 2008, Plaintiff Charles Sero filed a Complaint and Jury Demand (docket number 2) seeking monetary damages. Plaintiff asserts a claim under 42 U.S.C. § 1983 against all Defendants for violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts a state claim for negligence against all Defendants. On June 20, 2008, Defendants filed their Answer and Jury Demand (docket number 10) denying the material allegations and asserting certain affirmative defenses.

On November 12, 2008, Plaintiff filed an Amended Complaint and Jury Demand (docket number 20) for purposes of correcting a defendant's name and adding two additional defendants. On November 14, 2008, Defendants filed an Answer to Amended Complaint and Jury Demand (docket number 22).

On April 15, 2009, Plaintiff filed a Second Amended Complaint and Jury Demand (docket number 33) for purposes of clarifying his claim for injuries arising out of the same occurrence set forth in his Amended Complaint. Defendants filed an Answer to Second Amended Complaint and Jury Demand (docket number 34) on April 19, 2009.

On August 4, 2008, both parties consented to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). A jury trial is scheduled before the undersigned on October 13, 2009. Defendants filed the instant Motion for Summary Judgment (docket number 37) on June 5, 2009.

## III. ISSUES PRESENTED

In their motion for summary judgment, Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claims and state negligence claim for five reasons: (1) Defendant police officers are entitled to qualified immunity from Plaintiff's claims based upon the entry into his residence; (2) Defendant police officers are entitled to qualified immunity from Plaintiff's claims based upon his arrest; (3) Defendant police officers are entitled to qualified immunity from Plaintiff's claims based upon the use of

force during his arrest; (4) Plaintiff's § 1983 claim against Defendant City of Waterloo is not supported by substantial evidence; and (5) Defendants are immune from liability on Plaintiff's state negligence claim pursuant to Iowa Code section 670.4(11).

## IV. RELEVANT FACTS

At approximately 10:40 p.m. on January 21, 2007, Waterloo Police Officers Steven Newell and Al Bovy were on patrol and driving on Broadway Street in Waterloo, Iowa. Officers Newell and Bovy observed Carl Burchard exit the Broadway Liquor Store, walk across a parking lot, and head toward an adjacent alley. According to the officers, Burchard stared at the patrol car as he walked toward the alley. The officers turned off Broadway Street onto Fairview Street, and then turned into the alley where Burchard was walking. When the officers began driving toward Burchard, he took off running.

The officers lost sight of Burchard for a short time when he ran behind a garage. The officers stopped the patrol car next to the garage and located Burchard crouched down between a wooden box and a vehicle that was parked in a back yard near the garage. According to Officer Bovy's report, "[i]t looked like [Burchard] was trying to hide something from officers in the vehicle or a wooden box that was lying on the ground in front of the vehicle."[1] The officers exited their patrol car and told Burchard to stop, but Burchard stood up and started running. The officers ran after Burchard and saw him enter Plaintiff's residence at 541 Dawson Street through the back door.[2]

---

[1] *See* Defendants' Appendix at 55.

[2] According to Officer Newell's report, "Burchard reached the back door of 541 Dawson Street and yelled something. The door was opened and Burchard went into the residence and closed the door." *See* Defendants' Appendix at 52. Officer Bovy's report provided that: "Burchard ran up the few stairs to the back door. As he did this he looked back at me and yelled something, I am not sure what. Before officers could get to Burchard someone opened the door and let Burchard inside." *Id*. at 55.

Officer Bovy ran to the front of Plaintiff's residence and remained there. Officer Newell ran to the back door of Plaintiff's residence where Burchard had entered. In his report, Officer Newell stated:

> I ran onto the back porch and turned the door handle to enter the residence. When I tried to enter the residence, I noticed that the back door was locked. I pounded on the door and announced 'Waterloo Police Department open the door.' When nobody opened the door, I started to kick the door.

(Defendants' Appendix at 52.)

While Officer Newell was kicking the back door, Plaintiff's daughter, Nichole Sero ("Nichole") and her mother, Plaintiff's wife, Victoria Sero ("Victoria"), woke up Plaintiff, who was sleeping on a couch in the front room, and alerted him that someone was kicking in their back door. Plaintiff went to the back door and attempted to open it, but it was stuck and could not be opened. According to his deposition, Plaintiff asked:

> 'Who is it?' They said, 'Open the door.' And I'm yanking on the door trying to get it open to see who it was. And I yelled, 'Who is it' again. And they said, 'Open the fuckin' door.'

(Plaintiff's Appendix at 4 (Plaintiff's Deposition at p. 39, l. 4-8).) While Plaintiff was attempting to open the door, Officer Newell hit the door with his shoulder and forced it open. Officer Newell entered Plaintiff's residence into the kitchen. From the kitchen, Officer Newell observed Burchard in the dining room. Officer Newell asked Burchard to accompany him outside and advised him that he would be "tasered" if he did not comply with the request. Officer Newell and Burchard then exited Plaintiff's residence.

While Officers Newell and Bovy were speaking with Burchard outside of Plaintiff's home, Victoria went to the back door and confronted the officers. Victoria demanded to know why the officers had kicked in her door. She also wanted to know who was going to pay for fixing the door. When Victoria did not receive satisfactory answers to her questions, she called 9-1-1 and asked for a police supervisor to come to the house and answer her questions.

Sergeant Monty Frana went to Plaintiff's residence. Officers Shawn Bram and Nicholas Berry also went to the Plaintiff's residence and arrived at approximately the same time as Sgt. Frana. Victoria confronted Sgt. Frana and demanded to know who was going to pay for the damage to her back door. Sgt. Frana instructed Victoria to calm down or she would be arrested. Victoria continued to yell at the officers and complain about the damage to the door. Sgt. Frana told Victoria she was under arrest.

While placing Victoria under arrest, Plaintiff raised his hand or arm at, or in the direction of Sgt. Frana and asked the officers whether they had a warrant.[3] Officer Bram immediately seized Plaintiff, placed his arms behind his back, directed him toward the kitchen sink, and placed him under arrest. Plaintiff claims that Officer Bram's actions caused an injury to his right shoulder which required surgery. After Officer Bram arrested Plaintiff, Officer Berry arrested Victoria.

Plaintiff was charged with interference with official acts. Victoria was charged with disorderly conduct and interference with official acts. On October 29, 2007, a bench trial was held in the Iowa District Court for Black Hawk County. A judicial magistrate found Victoria not guilty of disorderly conduct, but found her guilty of interference with official acts. The court also found Plaintiff not guilty of interference with official acts. Additional facts which are relevant to the issues will be set forth below.

---

[3] It is unclear exactly what actions Plaintiff took when he raised his arm. According to Plaintiff, he raised his finger and asked "Where's the warrant?" *See* Defendants' Appendix at 6 (Plaintiff's Deposition at p. 54, l. 4-5). In her deposition, Victoria testified that Plaintiff lifted his hand and said "Do you have a search warrant?" *See* Defendants' Appendix at 17 (Victoria's Deposition at p. 61, l. 7-8). Sgt. Frana, however, testified in his deposition that Plaintiff grabbed his left arm. *See* Defendants' Appendix at 37-39. Officer Bram's deposition testimony also provides that Plaintiff grabbed Sgt. Frana's arm. *See* Defendants' Appendix at 45.

## V. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## VI.  DISCUSSION

### A.  Plaintiff's 42 U.S.C. § 1983 Action

In his Second Amended Complaint, Plaintiff claims that Defendant police officers violated his constitutional rights under the Fourth and Fourteenth Amendments by entering his home without a warrant, arresting him without a warrant, and using excessive force in his arrest.   Plaintiff also claims that Defendant City of Waterloo, Iowa, failed to properly instruct Defendant police officers "on a continuing basis as to the constitutional and lawful standards which govern" police officers actions in forcibly entering an individual's home without a warrant, arresting an individual without a warrant, and using excessive force during an arrest.[4]  Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983.

In determining whether a plaintiff is entitled to recover in a § 1983 action, the Court must determine whether he or she was deprived of a federal constitutional right by a person acting under color of state law.[5]  Thus, the Court must address two "essential elements:"

> [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:   (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) (same).

---

[4] *See* Plaintiff's Second Amended Complaint and Jury Demand (docket number 33) at 2-5.

[5] Section 1983 itself does not confer any substantive rights, "but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The first question posed by *Parratt* is easily dispatched. It is undisputed that Police Officers Steven Newell, Albert Bovy, Monty Frana, Shawn Bram, and Nicholas Berry were acting "under color of state law." *See West*, 487 U.S. at 49 ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' *United States v. Classic*, 313 U.S. 299, 326 (1941)."). When the police officers entered Plaintiff's house and later arrested him, they were clothed with the authority of the City of Waterloo and acted in their official capacities.

Furthermore, a § 1983 action may be brought against a municipality. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may not be held liable, however, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. That is, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* It is also important to note that "municipalities do not enjoy immunity from suit--either absolute or qualified--under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993). Accordingly, Plaintiff has established the first "essential element" of a § 1983 action; namely, that the conduct complained of was committed by persons acting under color of state law.

The second question posed by *Parratt* requires the plaintiff to identify the constitutional provision allegedly infringed. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Plaintiff claims that his constitutional rights were violated under the Fourth and Fourteenth Amendments when Defendant police officers entered his home without a warrant, arrested him without a warrant, and used excessive force in his arrest. Defendants do not appear to challenge Plaintiff's identification of the Fourth and Fourteenth Amendments as the constitutional provisions allegedly infringed. Instead, Defendants argue that summary judgment is appropriate because they are entitled to

qualified immunity from Plaintiff's § 1983 claims based on the Fourth and Fourteenth Amendments as they relate to the entry into Plaintiff's house, Plaintiff's arrest, and the alleged use of excessive force.

## B. Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Howard v. Kansas City Police Department*, ___ F.3d ___, 2009 WL 1885495 at *2 (8th Cir. 2009) ("'Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.' *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006).").

A two-part inquiry is employed to determine whether a government official is entitled to qualified immunity. *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009). The two-part inquiry requires the Court to determine:

> (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether the right was clearly established at the time of the defendant's alleged misconduct.

*Brown v. City of Golden Valley*, ___ F.3d ___, 2009 WL 2168871 at *3 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Until recently, *Saucier* mandated a specific sequence for analysis under the two-part inquiry. *See Saucier*, 533 U.S. at 200-01. Under the mandatory sequence of analysis set forth in *Saucier*:

> First, courts were to consider whether, 'taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right.' The 'existence or nonexistence of a constitutional right' was, therefore, a threshold question. Second, courts were 'to ask whether the right was clearly established.' This second

question is a fact-intensive inquiry that 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' 'For a right to be deemed clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."' In other words, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Serna*, 567 F.3d at 951-52 (quotations omitted). In *Pearson*, the Supreme Court eliminated the mandatory aspect of *Saucier*'s sequential analysis. *Id.* at 952; *see also Howard*, 2009 WL 1885495 at *2 ("Recently, however, the Supreme Court abandoned this rigid sequence and allowed judges 'to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'") (quoting *Pearson*, 129 S. Ct. at 818). In the present case, the Court elects to proceed under the traditional framework and decide first whether the facts demonstrate a violation of Plaintiff's constitutional rights before determining whether such rights were clearly established.

### C. Are Defendant Police Officers Entitled to Qualified Immunity From Plaintiff's Claims Based Upon Entry Into Plaintiff's House?

#### 1. Did Defendant Police Officers Have Reasonable Suspicion to Conduct an Investigatory Stop of Burchard?

At the outset, Plaintiff argues that the initial attempted investigatory stop of Burchard was "initiated without even reasonable suspicion that Burchard was engaging in or had been engaged in criminal activity."[6] Plaintiff claims that there is a "significant question as to whether or not 'probable cause' [existed] to believe an offense had occurred prior to Officer Newell kicking in [Plaintiff's] door."[7] In other words, Plaintiff contends that if the officers did not have reasonable suspicion to stop Burchard, then they had no

---

[6] *See* Plaintiff's Brief in Support of Resistance (docket number 39-3) at 15.

[7] *Id.*

reason to enter his residence without a warrant to search for, or arrest, Burchard. Therefore, the Court will first determine whether Officers Newell and Bovy had reasonable suspicion to conduct an investigatory stop of Burchard.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981)). A police officer may stop and briefly detain a person for investigative purposes if the officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30); *see also Cortez*, 449 U.S. at 417 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."); *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008) ("Where a police officer has reasonable suspicion that criminal activity may be afoot, the officer may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion."). A police officer is also justified in conducting an investigatory stop, if the officer has "reasonable suspicion that a crime has previously been committed by an individual." *Hughes*, 517 F.3d at 1016 (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)).

In *United States v. Ameling*, 328 F.3d 443 (8th Cir. 2003), the Eighth Circuit Court of Appeals explained that:

> A reviewing court must 'look at the "totality of the circumstances" of each case to see whether the . . . officer has a "particularized and objective basis" for suspecting legal wrongdoing.' In forming a basis for suspicion, officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."' While 'an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal

> activity need not rise to the level required for probable cause,
> and it falls considerably short of satisfying a preponderance of
> the evidence standard.'

*Id.* at 447 (quotations and citations omitted); *see also United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007) (In determining whether a police officer has a "particularized and objective basis" for suspecting criminal activity, the "'standard employed is less demanding than the standard of probable cause that governs arrests and full-scale Fourth Amendment searches, both with respect to the amount of supporting information that is required to establish reasonable suspicion and with respect to the degree of reliability that the information must exhibit.' *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002).").

The relevant facts for consideration here are: (1) In their experience, Officers Newell and Bovy considered the neighborhood they were patrolling to be a high crime area and the liquor store Burchard exited to be a problem store;[8] (2) Officers Newell's and

---

[8] In his deposition, Officer Newell stated:

> Q:  Okay.  Well, maybe I ought to ask you this.  What's
>     your -- I think in your report, you referred to this area
>     of Broadway as a high crime area.  What's your
>     definition of what constitutes a high crime area?
> A:  Like I said, robberies, burglaries, thefts, we have a lot
>     of gun violence or weapon violations in the area,
>     assaults.

*See* Defendants' Appendix at 20 (Officer Newell's Deposition at p. 17, l. 5-12).  Officer Bovy noted in his deposition that the police had been having problems both at the Broadway Liquor Store and the surrounding area.  Specifically, Officer Bovy testified that:

> Q:  And that was based on the way he looked at you?
> A:  The way he looked at us, because of the problems we'd
>     been having at that store, because of the area they were
>     in, yes.
> Q:  What problems had you been having at that store?
> A:  They've had theft problems, burglaries -- or I should
>     say robberies, a lot of teenagers buying -- or underaged

(continued...)

Bovy's suspicions were raised when Burchard exited the store and continuously watched their police vehicle as he walked away from the store; and (3) when Officers Newell and Bovy drove their police car down an alley toward Burchard, he took off running.

In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the Supreme Court determined that unprovoked flight in an area of high criminal activity constitutes reasonable suspicion sufficient for police officers to conduct an investigatory stop. *Id.* at 123-25. Based on the totality of the circumstances, the Court finds that Officers Newell and Bovy had "reasonable suspicion" supported by "particularized and objective" facts--including knowledge based on their own experience that the area they were patrolling was a high crime area, Burchard's suspicious and nervous activity of continuously watching them as they drove by him, and Burchard's unprovoked flight--to conduct an investigatory stop. *See Ameling*, 328 F.3d at 447.

### 2. Did Officer Newell's Entry Into Plaintiff's Residence Violate His Constitutional Rights?

Officer Newell entered Plaintiff's residence without a warrant as a result of Burchard's flight from Officers Newell and Bovy, and refusal to obey the officers' commands to stop. Burchard's flight from the officers ended when he entered Plaintiff's residence. Officer Newell followed Burchard up to Plaintiff's back door and proceeded to kick in the door for purposes of apprehending Burchard. The question before the Court is whether Officer Newell's warrantless entry into Plaintiff's house violated his constitutional rights.

The Fourth Amendment to the United States Constitution provides that "[t]he right of people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. The "physical entry of the home is

---

[8](...continued)
                    kids buying alcohol in that store.

*See* Defendants' Appendix at 29 (Officer Bovy's Deposition at p. 5, l. 7-17).

the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586 (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)). Thus, warrantless entry of a home by a police officer is prohibited, unless "the circumstances are within a reasonableness exception to the warrant requirement." *United States v. Clarke*, 564 F.3d 949, 958-59 (8th Cir. 2009) (citing *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008)). For example, "a non-consensual, warrantless search of a home" is allowed "if the search is supported by probable cause and exigent circumstances." *Clarke*, 564 F.3d at 959 (citation omitted). Specifically, the exigent circumstances exception allows a police officer to take immediate action if "'lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed.'" *Id.* (quoting *United States v. Hogan*, 539 F.3d 916, 922 (8th Cir. 2008), in turn quoting *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996)).

Of particular importance for this case is the United States Supreme Court's determination that hot pursuit of a felony defendant constitutes an exigent circumstance sufficient to justify the warrantless entry of a defendant's house. *United States v. Santana*, 427 U.S. 38, 42-43 (1976); *see also Minnesota v. Olson*, 495 U.S. 91, 100 (1990) (reaffirming that warrantless entry into a house may be justified by hot pursuit of a fleeing felon); *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (providing that police officers had the right to make a warrantless entry into a house to arrest an armed robber when the police officers had probable cause to believe that the robber had entered the house a few minutes before they arrived on the scene); *United States v. Schmidt*, 403 F.3d 1009, 1013-14 (8th Cir. 2005) (finding that hot pursuit justified warrantless entry into a defendant's house when the police officer had probable cause to believe that the defendant had committed a felony offense). Additionally, in *Welsh v. Wisconsin*, 466 U.S. 740 (1984),

the Supreme Court instructed courts to "weigh the 'gravity of the underlying offense' in determining the legality of the entry." *Schmidt*, 403 F.3d at 1013. The Supreme Court explained:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Welsh*, 466 U.S. at 750 (citations omitted). In discussing *Welsh*, the Eighth Circuit Court of Appeals pointed out that *Welsh*:

> casts serious doubt on the question of whether a warrantless home arrest for a misdemeanor will ever be deemed reasonable. . . . In holding the entry of Welsh's home unlawful, the Supreme Court held that the gravity of the offense for which a person is arrested has crucial bearing on whether circumstances were exigent enough to justify a warrantless home arrest. The Court stated: 'It is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.' On the other, the Court declined to say flatly that there could be no warrantless home arrest for a misdemeanor: 'Because we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home entry, we have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses.'

*Greiner v. City of Champlin*, 27 F.3d 1346, 1353-54 (8th Circ. 1994) (quotations omitted).

In determining whether the police officer's warrantless entry into Plaintiff's home violated Plaintiff's rights, the Court considers the following circumstances: (1) The officers did not have probable cause to believe that Burchard had committed any felony offense. At most, Burchard's failure to stop when commanded by officers Newell and Bovy, gave the officers reasonable grounds to arrest Burchard for interference with official acts in violation of Iowa Code section 719.1[9]; (2) interference with official acts is a simple misdemeanor;[10] (3) Officer Newell's deposition testimony indicated that Burchard's flight into Plaintiff's home raised several concerns, including the safety of the home's occupants and concealment of evidence;[11] (4) Officer Newell's deposition testimony provided that there was no emergency, health risk, or safety issue when he kicked in Plaintiff's back

---

[9] Iowa Code section 719.1 provides that:

> A person who knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . commits a simple misdemeanor.

[10] *Id.*

[11] In his deposition, Officer Newell testified:

> Q:   Was there anything that would have prevented you from taking the time to go -- simply go get a warrant?
> A:   Yes.
> Q:   What?
> A:   When I have somebody run into a house, I want to get in there as quick as possible. I don't know if he has a gun, I don't know if he's waiting for me to enter the house, I don't know if he's trying to hide something. I don't know what his intention is for running into that house. . . . My intention was to get in there as quick as possible to apprehend him.

*See* Plaintiff's Appendix at 30-31 (Officer Newell's Deposition at p. 28, l. 15 - p. 29, l. 4).

door to apprehend Burchard;[12] (5) Officer Bovy positioned himself at the front door of Plaintiff's residence; (6) Officer Newell stated that he pounded on Plaintiff's back door and announced Waterloo Police Department, but acknowledged that he did not give anyone a chance to open the door;[13] and (7) Plaintiff investigated who was kicking in his back door and asked "'Who is it?' They said, 'Open the door.' And I'm yanking on the door trying to get it open to see who it was. And I yelled, 'Who is it' again. And they said, 'Open the fuckin' door.'"[14]

Based on the totality of the circumstances and considering the facts in the light most favorable to the Plaintiff, *Serna*, 567 F.3d at 951, the Court determines that Officer Newell's warrantless entry into Plaintiff's residence was not supported by probable cause and exigent circumstances. Officers Newell and Bovy were not in hot pursuit of a felon when Burchard entered Plaintiff's house. *See Olson*, 495 U.S. at 100 (reaffirming that warrantless entry into a house may be justified by hot pursuit of a fleeing felon); *Schmidt*, 403 F.3d at 1013-14 (finding that hot pursuit justified warrantless entry into a defendant's

---

[12] In his deposition, Officer Newell testified that:

Q: No. I'm asking if there was an emergency. Any type of emergency. Anybody's health at risk, any safety issues, anything like that[?]

A: No.

*See* Plaintiff's Appendix at 30 (Officer Newell's Deposition at p. 28, l. 10-14).

[13] In his deposition, Officer Newell testified that:

Q: How long did you wait after you announced Waterloo Police Department before you started kicking the door?

A: Probably just a couple of seconds.

Q: So you really didn't give anybody that would have been in there a chance to come open the door, did you?

A: No.

*See* Plaintiff's Appendix at 31 (Officer Newell's Deposition at p. 29, l. 17-24).

[14] *See* Plaintiff's Appendix at 4 (Plaintiff's Deposition at p. 39, l. 4-8).

house when the police officer had probable cause to believe that the defendant had committed a felony offense). Burchard's offense for which the officers had probable cause to arrest him was very minor, a simple misdemeanor. *See Welsh*, 466 U.S. at 750. Finally, there is no evidence that the officers believed any lives were threatened, Burchard's escape was imminent, or that evidence was about to be destroyed.[15] *See Clarke*, 564 F.3d at 951. Accordingly, the Court finds that Plaintiff has shown facts which make out a violation of his constitutional rights under the Fourth Amendment. *See Brown*, 2009 WL 2168871 at *3.

### 3. *Was the Right Clearly Established?*

The next step in the qualified immunity analysis is a determination of "whether the right [that was violated] was clearly established at the time of defendant's alleged misconduct." *Brown*, 2009 WL 2168871 at *3 (citation omitted).

In order for a constitutional violation to be clearly established, "'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Howard*, 2009 WL 1885495 at *5 (quoting *Lindsey v. Orrick*, 491 F.3d 892, 902 (8th Cir. 2007)). The question courts must ask is "'whether the law gave the officials "fair warning that their alleged conduct was unconstitutional.'" *Id.* (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)). It is important to note that "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Brown*, 2009 WL 2168871 at *6 ("The standard does not require that there be a case with materially or fundamentally similar facts."). Thus, "'[t]he relevant, dispositive

---

[15] Officer Newell testified that there was no emergency, health risk, or safety issue when he kicked in Plaintiff's back door for purposes of apprehending Burchard. *See* Plaintiff's Appendix at 30 (Officer Newell's Deposition at p. 28, l. 10-14.) Officer Bovy was positioned at the front door of Plaintiff's residence to stop Burchard from exiting the house through the front door. Lastly, there is no evidence in the record that the officers were concerned that Burchard had anything incriminating to destroy.

inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.'" *Brown*, 2009 WL 2168871 at \*6 (quoting *Saucier*, 533 U.S. at 202). Accordingly, the Court must determine whether the facts alleged support a claim of a violation of Plaintiff's clearly established Fourth Amendment rights such that "a reasonable officer would have fair warning that his alleged conduct was unlawful." *Id.* (citations omitted).

Furthermore, in the context of summary judgment, the Eighth Circuit Court of Appeals has explained that:

> To avoid summary judgment based on qualified immunity, [a plaintiff] must proffer sufficient evidence to raise a genuine issue of material fact about whether a reasonable officer would have known that [his or her] conduct violated a clearly established right. . . . If, taking the facts in the light most favorable to [the plaintiff], [a court] find[s] that there are no material issues of fact and [the defendant's] actions were objectively reasonable in light of the law and information he possessed at the time, [the defendant] is entitled to qualified immunity as a matter of law.

*Engleman v. Deputy Murray*, 546 F.3d 944, 947-48 (8th Cir. 2008) (citations omitted); *see also Hill v. Scott*, 349 F.3d 1068, 1071-72 (In the context of a warrantless arrest, "[i]f an officer alleges conduct by an arrestee giving rise to probable cause and those facts are undisputed, the officer is entitled to qualified immunity. *Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir. 1993). If, however, the arrestee challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment. *Id.* at 124.").

At the time of Officer Newell's warrantless entry into Plaintiff's residence, it was clearly established that the Fourth Amendment is violated if a police officer enters a home without a warrant or without probable cause and exigent circumstances. *See Clarke*, 564 F.3d at 959. It is also clearly established under federal law that hot pursuit of a felony

defendant constitutes an exigent circumstance sufficient to justify the warrantless entry of a defendant's house. *United States v. Santana*, 427 U.S. 38, 42-43 (1976); *see also Minnesota v. Olson*, 495 U.S. 91, 100 (reaffirming that warrantless entry into a house may be justified by hot pursuit of a fleeing felon); *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (providing that police officers had the right to make a warrantless entry into a house to arrest an armed robber when the police officers had probable cause to believe that the robber had entered the house a few minutes before they arrived on the scene); *United States v. Schmidt*, 403 F.3d 1009, 1013-14 (8th Cir. 2005) (finding that hot pursuit justified warrantless entry into a defendant's house when the police officer had probable cause to believe that the defendant had committed a felony offense).

Here, the police officers were not in hot pursuit of an individual suspected of having committed a felony offense. Furthermore there is evidence that the officers did not believe any lives were threatened, Burchard's escape was imminent, or that evidence was about to be destroyed.[16] *See Clarke*, 564 F.3d at 951 (discussing exigent circumstances other than hot pursuit of a felon). Viewing the record in the light most favorable to Plaintiff, as the Court must on a motion for summary judgment filed by Defendants, the Court finds that a reasonable officer would have known that his conduct violated a clearly established right.[17] *See Engleman*, 546 F.3d at 947-48. Therefore, the Court finds that Defendant

---

[16] Officer Newell testified that there was no emergency, health risk, or safety issue when he kicked in Plaintiff's back door for purposes of apprehending Burchard. *See* Plaintiff's Appendix at 30 (Officer Newell's Deposition at p. 28, l. 10-14.) Officer Bovy was positioned at the front door of Plaintiff's residence to stop Burchard from exiting the house through the front door. Lastly, there is no evidence in the record that the officers were concerned that Burchard had anything incriminating to destroy.

[17] Plaintiff and Defendants spend much of their briefs discussing Iowa case law in which warrantless entry into a garage or house to conduct a non-felony arrest is deemed acceptable. *See State v. Pink*, 648 N.W.2d 107 (Iowa 2001) (allowing warrantless entry into a home to arrest an individual for OWI and other non-felony charges); *State v. Legg*, 633 N.W.2d 763 (Iowa 2001) (allowing warrantless entry into a garage to arrest an

(continued...)

Officers are not entitled to summary judgment on Plaintiff's § 1983 claim based upon the warrantless entry into his residence. *See Hill*, 349 F.3d at 1071-72.

### D. Are Defendant Police Officers Entitled to Qualified Immunity From Plaintiff's Claims Based Upon Plaintiff's Arrest?

### 1. Did Defendant Police Officers Have "Arguable Probable Cause" to Arrest Plaintiff?

After entering Plaintiff's residence, Officer Newell removed Burchard from Plaintiff's house. While the officers were speaking with Burchard outside Plaintiff's residence, Plaintiff's wife, Victoria, confronted the officers and demanded to know why they had kicked in her back door and who was going to pay for the damages. When Victoria did not receive satisfactory answers from the officers, she requested to speak with their supervisor. Sgt. Frana and two other officers arrived at Plaintiff's home to speak with Victoria. She confronted Sgt. Frana and he instructed her to calm down or she would be placed under arrest. Victoria did not calm down and Sgt. Frana told her that she was under arrest. At this point, Plaintiff raised his hand or arm at or in the direction of Sgt. Frana, and asked the officers whether they had a warrant to arrest Victoria. Both Sgt. Frana and Officer Bram claim that Plaintiff grabbed Sgt. Frana's arm. In any event, Officer Bram immediately seized Plaintiff, placed his arms behind his back, directed him

---

[17](...continued)

individual for OWI and other non-felony charges); *State v. Harris*, 2002 WL 31015975 (Iowa App. Ct. 2002) (unpublished opinion) (allowing warrantless entry into a house to arrest a suspect for interference with official acts, after suspect hurriedly walk away from a police officer and refused to stop for investigatory purposes before entering the house). Because this is a § 1983 case involving qualified immunity, these cases are not controlling. Qualified immunity in a § 1983 case protects a government official who violates the *federally* protected rights of plaintiff so long as the government official did not violate clearly established *federal* law. *See Parratt*, 451 U.S. at 535; *see also* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]").

toward the kitchen sink, and placed him under arrest. Plaintiff argues that the police officers lacked "arguable probable cause" to arrest him.

"'A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *see also Kiser v. City of Huron*, 219 F.3d 814, 815 (8th Cir. 2000) (If a police officer has probable cause, he or she may lawfully arrest an individual, "even without the benefit of a warrant."); *Olinger v. Larson*, 134 F.3d 1362, 1366 (8th Cir. 1998) ("An officer has probable cause to make a warrantless arrest when facts known to the officer are sufficient to make a reasonably prudent officer believe that the suspect is committing or has committed an offense.") (citing *Ripson v. Alles*, 21 F.3d 805, 808 (8th Cir. 1994)). In determining whether an officer has probable cause to arrest an individual, courts should "'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Jones*, 535 F.3d at 890 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Absent probable cause, a warrantless arrest may support a claim under § 1983." *Kiser*, 219 F.3d at 815 (citing *Hannah v City of Overland*, 795 F.2d 1385, 1389 (8th Cir. 1986)).

In the context of qualified immunity:

> [L]aw enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so-provided that the mistake is objectively reasonable. *Hunter v. Bryant*, 502 U.S. 224, 228-29, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). Stated otherwise, 'The issue for immunity purposes is not probable cause in fact but arguable probable cause.' *Habiger* [*v. City of Fargo*], 80 F.3d [289,] 295 [(8th Cir. 1996)].

*Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000).

The facts, considered in the light most favorable to Plaintiff, *Serna*, 567 F.3d at 951, are: (1) Plaintiff was approximately four to five feet from Sgt. Frana when he raised

his hand to ask if the officers had a warrant to arrest Victoria;[18] (2) Officer Matthew Wertz, another police officer at the scene who is not a Defendant in this action, testified in his deposition that Plaintiff did not struggle with the other police officers;[19] and (3) while placing Victoria under arrest, Plaintiff raised his hand or arm at, or in the direction of Sgt. Frana and asked the officers whether they had a warrant.[20]

---

[18] *See* Plaintiff's Appendix at 12 (Plaintiff's Deposition at p. 78, l. 11-18). Additionally, Victoria's deposition testimony provides:

> Q:    Okay.  Now how far -- when your husband raised his hand, how far was he from Sergeant Frana?
>
> A:    Well, he was here and [Sgt.] Frana was about here from the door, because I was here at the stove, so he was about that far away.  He was quite a ways from him.

*See* Plaintiff's Appendix at 19 (Victoria's Deposition at p. 60, l. 8-14).

[19] Officer Wertz's deposition testimony provides:

> Q:    Was [Plaintiff] struggling at all?
>
> A:    Not that I know of.
>
> Q:    Was he in handcuffs yet?
>
> A:    No, sir.
>
> Q:    Did he have his arm behind his back?
>
> A:    I don't remember that.
>
> Q:    But you don't recall any struggle?
>
> A:    No, I don't recall any struggle. . . .
>
> Q:    So when [Plaintiff] was up against the counter or area like that, he was not in handcuffs; is that correct?
>
> A:    I don't believe so.
>
> Q:    And he was not struggling.
>
> A:    No, not that I saw.

*See* Plaintiff's Appendix at 70 (Officer Wertz's Deposition at p. 15, l. 6-23.)

[20] According to Plaintiff, he raised his finger and asked "Where's the warrant?" *See* Defendants' Appendix at 6 (Plaintiff's Deposition at p. 54, l. 4-5).  In her deposition, Victoria testified that Plaintiff lifted his hand and said "Do you have a search warrant?" *See* Defendants' Appendix at 17 (Victoria's Deposition at p. 61, l. 7-8).  Again, the Court
(continued...)

The Court finds that a reasonably prudent officer confronted with the facts presented in this case--a warrantless police entry into Plaintiff's home by the back door being kicked in, an upset wife concerned with the damage to the door, said upset wife being placed under arrest for confronting the officers about the damaged door, and Plaintiff raising his hand to ask whether the officers had a warrant to arrest his wife--would not conclude that such facts amount to arguable probable cause to believe that a criminal offense had been or was being committed. *See Jones*, 535 F.3d at 890; *Smithson*, 235 F.3d at 1062. Accordingly, the Court finds that Plaintiff has alleged facts which, if believed, make out a violation of his constitutional rights under the Fourth Amendment. *See Brown*, 2009 WL 2168871 at *3.

### 2. *Was the Right Clearly Established?*

The next step in the qualified immunity analysis is the determination of "whether the right [that was violated] was clearly established at the time of defendant's alleged misconduct." *Brown*, 2009 WL 2168871 at *3 (citation omitted). "'The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.'" *Brown*, 2009 WL 2168871 at *6 (quoting *Saucier*, 533 U.S. at 202). Accordingly, the Court must determine whether the facts alleged support a claim of a violation of Plaintiff's clearly established Fourth Amendment rights such that "a reasonable officer would have fair warning that his alleged conduct was unlawful." *Id.* (citations omitted).

At the time of Plaintiff's warrantless arrest, it was clearly established that the Fourth Amendment is violated if the arresting law officer lacks "'probable cause to believe that a criminal offense has been or is being committed.'" *Jones*, 535 F.3d at 890 (quotation omitted). The Court, viewing the facts in the light most favorable to Plaintiff--a

---

[20](...continued)
notes that Sgt. Frana testified in his deposition that Plaintiff grabbed his left arm. *See* Defendants' Appendix at 37-39. Officer Bram also testified in his deposition that Plaintiff grabbed Sgt. Frana's arm. *See* Defendants' Appendix at 45.

warrantless police entry into Plaintiff's home by the back door being kicked in, an upset wife concerned with the damage to the door, said upset wife being placed under arrest for confronting the officers about the damaged door, and Plaintiff raising his hand to ask whether the officers had a warrant to arrest his wife--finds that a reasonable officer would not have believed that Plaintiff was committing a criminal offense and would have known that his conduct, arresting Plaintiff without a warrant, violated a clearly established right. *See Engleman*, 546 F.3d at 947-48. Therefore, the Court finds that Defendant Officers are not entitled to summary judgment on Plaintiff's § 1983 claim based upon Plaintiff's warrantless arrest. *See Hill*, 349 F.3d at 1071-72.

### E. Are Defendant Police Officers Entitled to Qualified Immunity From Plaintiff's Claims Based Upon the Use of Excessive Force During Plaintiff's Arrest?

### 1. Did Defendant Police Officers Use Excessive Force When Placing Plaintiff Under Arrest?

After Plaintiff raised his hand or arm at or in the direction of Sgt. Frana, and asked the officers whether they had a warrant to arrest his wife, Officer Bram immediately seized Plaintiff, placed his arms behind his back, directed him toward the kitchen sink, and placed him under arrest. Plaintiff claims that Officer Bram's actions caused an injury to his right shoulder which required surgery. Plaintiff argues that Officer Bram used excessive force causing him injury while placing him under arrest.

Excessive force claims are analyzed in the context of seizures under the Fourth Amendment. *Brown v. City of Golden Valley*, ___ F.3d ___, 2009 WL 2168871 at *3 (8th Cir. 2009). "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right use some degree of physical coercion or threat thereof to effect it.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In order to establish a constitutional violation under the Fourth Amendment right to be free from excessive force, courts must consider "'whether the amount of force used was objectively reasonable under the particular circumstances.'"

*Henderson*, 439 F.3d at 502 (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004), in turn quoting *Greiner*, 27 F.3d at 1354); *see also Howard*, 2009 WL 1885495 at *3 ("The penultimate question is 'whether the amount of force used was objectively reasonable under the particular circumstances.'") (quotation omitted).

In *Howard*, the Eighth Circuit Court of Appeals explained that:

> 'Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' In assessing the reasonableness of the Officers' conduct, we look to the totality of the circumstances and focus on factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. We may also consider the result of the force.

*Howard*, 2009 WL 1885495 at *3 (quotations and citations omitted). Furthermore, courts must consider the reasonableness of a police officer's use of force "'from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.'" *Brown*, 2009 WL 2168871 at *4 (quoting *Graham*, 490 U.S. at 396).

The facts, considered in the light most favorable to Plaintiff, *Serna*, 567 F.3d at 951, are: (1) Plaintiff was four or five feet away from Officer Frana when he raised his hand and asked whether the officers had a warrant to arrest his wife;[21] (2) Plaintiff did not

---

[21] *See* Plaintiff's Appendix at 12, 19 (deposition testimony as to how far Plaintiff was from Sgt. Frana when he raised his hand and asked whether the officers had an arrest warrant); Defendants' Appendix at 6, 17 (deposition testimony regarding Plaintiff raising his hand and asking about an arrest warrant). Again, the Court notes that Sgt. Frana testified in his deposition that Plaintiff grabbed his left arm. *See* Defendants' Appendix at 37-39. Officer Bram also testified in his deposition that Plaintiff grabbed Sgt. Frana's arm. *See* Defendants' Appendix at 45.

struggle with the officers;[22] (3) Plaintiff was arrested for interference with official acts in violation of Iowa Code section 719.1, a simple misdemeanor;[23] (4) when arresting Plaintiff, Officer Bram put Plaintiff's hands behind his back, shoved them up his back, and pushed him against the kitchen sink;[24] and (5) as a result of Officer Bram's actions, Plaintiff injured his right shoulder and required surgery.[25]

In assessing the reasonableness of Officer Bram's conduct, the Court considers that: (1) Plaintiff's alleged crime was very minor, a simple misdemeanor; (2) there is no evidence suggesting Plaintiff posed an immediate threat to the officers or others;[26]

---

[22] *See* Plaintiff's Appendix at 70 (Officer Matthew Wertz's Deposition).

[23] *See* Iowa Code section 719.1.

[24] In her deposition testimony, Plaintiff's wife, Victoria, described the incident as follows:

> A: . . . And then that's when that cop over here grabbed [Plaintiff] and put his hands behind his back and shoved them way up and pushed him. And my strainer and dishes went everywhere and they had his head in the sink. . . .

*See* Plaintiff's Appendix at 19 (Victoria's Deposition at p. 58, l. 12-16); *see also* Plaintiff's Appendix at 11 (Plaintiff testified in his deposition that Officer Bram "grabbed" and "twisted" his arms behind his back).

[25] *See* Plaintiff's Appendix at 10-11 (Plaintiff's deposition testimony regarding his shoulder injury and surgery).

[26] The Court acknowledges that both Sgt. Frana and Officer Bram testified that Plaintiff grabbed Sgt. Frana's arm instead of lifting his hand, when he asked whether they had a warrant to arrest his wife. Both Plaintiff and his wife, however, testified that Plaintiff did not grab Sgt. Frana's arm and that he was four to five feet away from Sgt. Frana when he was arrested. Because this is Defendants' motion for summary judgment, the Court must view the record in the light most favorable to Plaintiff and afford him all reasonable inferences. *See Baer Gallery, Inc.*, 450 F.3d at 820. Thus, for purposes of the above inquiry, the Court shall view the facts as though Plaintiff raised his hand instead of grabbing Sgt. Frana's arm. *See also Serna*, 567 F.3d at 951 (In the qualified immunity context, courts first, "consider whether, 'taken in the light most favorable to the party (continued...)

(3) Plaintiff did not struggle with officers, resist arrest, or attempt to escape; and (4) Plaintiff's right shoulder was injured and required surgery. *See Howard*, 2009 WL 1885495 at *3. Having considered these facts, the Court determines that under the circumstances presented, Officer Bram's use of force in shoving Plaintiff's arm up his back to the point that it caused a tear in his right shoulder was objectively unreasonable. *See Henderson*, 439 F.3d at 502. Accordingly, the Court finds that Plaintiff has alleged facts which, if believed, make out a violation of his constitutional rights under the Fourth Amendment. *See Brown*, 2009 WL 2168871 at *3.

### 2. *Was the Right Clearly Established?*

The next step in the qualified immunity analysis is the determination of "whether the right [that was violated] was clearly established at the time of defendant's alleged misconduct." *Brown*, 2009 WL 2168871 at *3 (citation omitted). "'The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.'" *Brown*, 2009 WL 2168871 at *6 (quoting *Saucier*, 533 U.S. at 202). Accordingly, the Court must determine whether the facts alleged support a claim of a violation of Plaintiff's clearly established Fourth Amendment rights such that "a reasonable officer would have fair warning that his alleged conduct was unlawful." *Id*. (citations omitted).

"'The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person.'" *Howard*, 2009 WL 1885495 at *5. In *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002), the Eighth Circuit Court of Appeals found that the plaintiff, who did not resist arrest or take an aggressive stance, and was forced against a truck, had his arm twisted, and raised high behind his back injuring his collar bone, shoulder, neck, and wrist, raised a "genuine issue

---

[26](...continued)
asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right.'") (quotation omitted).

of whether the force used was excessive, so the district court properly denied summary judgment[.]" *Id.* Similarly, in this case, Plaintiff did not resist arrest, struggle with the arresting officers, pose a threat to the officers, or attempt to escape, and had his arms placed behind his back and shoved high up his back causing a shoulder injury requiring surgery. The Court, viewing the facts in the light most favorable to Plaintiff, finds that the force used during his arrest was excessive and violated a clearly established right. *See Engleman*, 546 F.3d at 947-48; *see also Kukla*, 310 F.3d at 1050. Therefore, the Court finds that Defendant Officers are not entitled to summary judgment on Plaintiff's § 1983 claim based upon the use of excessive force when arresting Plaintiff. *See Hill*, 349 F.3d at 1071-72.

### F. Is There Sufficient Evidence that the City of Waterloo Failed to Properly Train Its Police Officers?

Municipal liability under § 1983 is established if the plaintiff shows that a "constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, ___ F.3d ___, 2009 WL 1955615 at *3 (8th Cir. 2009) (citing *Monell*, 436 U.S. at 690-92). Municipal liability attaches under two basic circumstances: (1) where a particular municipal policy or custom violates federal law, or the policy or custom directs an employee to violate federal law; and (2) where a lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Id.* (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008)).

Plaintiff argues that Defendant City of Waterloo failed to train its police officers with regard to the proper procedures for warrantless entry into a personal residence, including "hot pursuit" of a fleeing suspect. Plaintiff also argues that the City of Waterloo failed to train its officers "as to the potential to cause injuries on an arrestee by pushing

the arrestee's arm too far behind their back."[27]  Plaintiff concludes that "[t]he City of Waterloo's failure to train its officers in these most basic of techniques constitutes deliberate indifference and thereby subjects the city to liability for its inaction."[28]

Plaintiff's argument focuses on the second circumstance under which municipal liability may attach.  Specifically, "'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"  *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  In *Otey v. Marshall*, 121 F.3d 1150 (8th Cir. 1997), the Eighth Circuit Court of Appeals  further explained:

> It is necessary to show that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In other words, the plaintiff must demonstrate that the city had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.

*Id*. at 1156 (quotations and citations omitted).  While Plaintiff presents evidence that Officers Newell, Bovy, Berry, and Bram did not have significant training outside of their academy training and routine department training, and could not identify specific policies regarding "hot pursuit" or handcuffing procedures,[29] Plaintiff fails to present any evidence suggesting the City of Waterloo "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights."  *Id*.  The Court finds that without such

---

[27] *See* Plaintiff's Brief in Support of Resistance (docket number 39-3) at 30.

[28] *Id*.

[29] *See* Plaintiff's Appendix at 26-27 (Officer Newell), 46-49 (Officer Bovy), 62-63 (Officer Berry), and 68 (Office Bram).

facts to demonstrate that there is a genuine issue for trial, Plaintiff's mere allegations that the City of Waterloo failed to train its police officers cannot defeat summary judgment. *See Baum*, 440 F.3d at 1022 ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."); *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) ("'Evidence, not contentions, avoids summary judgment.'") (quotation omitted)). Therefore, the Court determines that Defendant City of Waterloo is entitled to summary judgment on Plaintiff's § 1983 failure to train claim.

### G. Plaintiff's State Negligence Claim

Defendants argue that Iowa Code section 670.4(11) provides them with immunity from liability on Plaintiff's state negligence claim. Code section 670.4(11) provides a municipality with immunity from liability to:

> A claim based upon or arising out of an act or omission in connection with an emergency response including but not limited to acts or omissions in connection with emergency response communications services.

*Id*. The immunity provided to municipalities in Code section 670.4 also applies to police officers employed by such municipalities. *See* Iowa Code section 670.12. The Iowa Supreme Court has interpreted section 670.4 broadly and has found the words "in connection with" to convey a legislative intent to cover a wide range of situations. *Adams v. City of Des Moines*, 629 N.W.2d 367, 370 (Iowa 2001) (citing *Kulish v. Ellsworth*, 566 N.W.2d 885, 891 (Iowa 1997)); *see also Cubit v. Mahaska County*, 677 N.W.2d 777, 782 (Iowa 2004) ("The statute sweeps broadly, encompassing all 'claims based upon or arising out of an act or omission in connection with an emergency response. . . ."). Furthermore, section 670.4(11) is not only concerned with the emergency giving rise to the response, but also to the response itself. *Adams*, 629 N.W.2d at 370. "In other words, it is the occurrence and continuation of an emergency response, rather than just an emergency, that extends the city's immunity from liability." *Id*.

In this case, the police officers were pursuing a fleeing suspect. Such police action constitutes an emergency response for purposes of section 670.4(11). *See Cubit*, 677 N.W.2d at 781-82 (involving a high speed chase of a fleeing suspect). In accordance with *Adams*, 629 N.W.2d at 370, the immunity extends to the police officer's warrantless entry into Plaintiff's residence, Plaintiff's arrest, and the force used in his arrest. Moreover, Plaintiff offers little resistance to Defendants' argument:

> Defendants accurately restate the legal principles surrounding actions that are taken 'in connection with an emergency response.['] Though [Plaintiff] contends, however, that the officers who effectuated his arrest were not present as a result of the 'emergency response' to Carl Burchard's flight. The officers would not have been called but for the initial response and summary judgment may be appropriate for the Defendants on these claims.

(Plaintiff's Brief in Support of Resistance (docket number 39-3) at 31.) Plaintiff cites no authority for the argument that while section 670.4 may provide immunity to the initial officers on the scene, it provides no protection for the officers arriving later. The Court concludes that Defendants are entitled to summary judgment on Plaintiff's state negligence claims.

## VII. CONCLUSION

The Court concludes that Defendants are entitled to summary judgment on Plaintiff's § 1983 "failure to train" claim and state common-law negligence claim. The Court further concludes, however, that Defendants are not entitled to summary judgment on Plaintiff's § 1983 claims involving warrantless entry into his house, his warrantless arrest, and use of excessive force in his arrest.[30]

---

[30] In their motion for summary judgment, Defendants argue that they are entitled to summary judgment because of qualified immunity. While the evidence supporting a finding of a constitutional violation by certain individual officers may be lacking, no argument in that regard was raised in the motion.

## VIII.  ORDER

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (docket number 37) filed by Defendants is hereby **GRANTED** in part and **DENIED** in part, as follows:  Defendants are entitled to summary judgment on Plaintiff's § 1983 "failure to train" claim, directed at the City of Waterloo, and state negligence claim, directed at all of the Defendants.  The City of Waterloo is dismissed as a Defendant.  Count 2 of the Second Amended Complaint is dismissed.  Defendants are not entitled to summary judgment on Plaintiff's § 1983 claims involving warrantless entry into his house, his warrantless arrest, and use of excessive force in his arrest.

DATED this ____11th____ day of August, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA